UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MELVIN JACKSON, ET AL          CIVIL ACTION NO. 18-cv-1146

VERSUS          MAGISTRATE JUDGE HORNSBY

BERKSHIRE HATHAWAY GLOBAL
INSURANCE SERVICES

**MEMORANDUM RULING**

**Introduction**

Berkshire Hathaway Homestate Insurance Company issued a policy of commercial auto insurance to MLJ Trucking, LLC. Two of MLJ's trucks suffered property damage in separate accidents. MLJ made two property damage claims against the policy. Berkshire paid both claims, but MLJ filed this suit against Berkshire to seek penalties under Louisiana statutes for alleged unlawful delay in making the payments. Before the court is Berkshire's Motion for Summary Judgment (Doc. 27) that raises separate attacks on the two claims. For the reasons that follow, Berkshire's motion will be denied.

**Claim No. 1**

MLJ alleged in its petition that its 2014 Peterbilt truck was damaged in an accident on July 31, 2017. MLJ reported the accident to Berkshire that same day. Berkshire assessed the damage to the truck on August 8, 2017 to be $40,752.84, less a $1,000 deductible. MLJ alleges that Berkshire did not pay the amount of the loss until November 28, 2017, which was more than 90 days later. Petition, ¶¶ 3-6. MLJ alleges that the late payment entitles it to penalties under La. R.S. 22:1892(B)(1) that required payment within

30 days of proof of loss and La. R.S. 22:1973 that required payment within 60 days of proof of loss. ¶¶ 7-9.

Berkshire represents that its policy covered only those autos described on the declarations page, which referred to an attached schedule of insured autos. Claim No. 1 presented by MLJ was for a 2014 Peterbilt truck bearing VIN 1XPXDP0X**9**ED23325**3**. The actual VIN on the truck was 1XPXDP0X**5**ED23325**1**. Berkshire represents that the truck on which the claim was based was not identified or scheduled anywhere in the policy.

To recover statutory penalties against an insurer under Louisiana law, the insured must have a valid underlying substantive claim upon which insurance coverage is based. <u>Matthews v. Allstate Ins. Co.</u>, 731 F. Supp. 2d 552, 566 (E.D. La. 2010), cited with approval in <u>Naquin v. Elevating Boats, LLC</u>, 817 F.3d 235, 240 (5th Cir. 2016). Berkshire's sole attack on Claim No. 1 is that the lack of coverage for the Peterbilt truck bearing VIN ending in 253 is fatal to the claim for penalties because there was no valid underlying claim against the policy with respect to that truck.

But Berkshire eventually paid Claim No. 1, so one might think there could be more to the story. And there is. The summary judgment materials submitted by MLJ indicate that MLJ purchased trucks from a Mr. Turnipseed, who had insurance on those trucks thorough the Pace Insurance Agency. Mrs. Jackson, a principal in MLJ, testified that MLJ asked Pace to place the insurance on the trucks in its name. When MLJ later made a claim, it was discovered that there was a discrepancy in the VIN for one of the trucks. Mrs. Jackson testified that the VIN information had been provided to the insurer by Pace, and she did not know how Pace obtained the information. Her entire input had been to orally

request that the Turnipseed trucks that MLJ purchased be scheduled on MLJ's policy. Berkshire's claims notes indicate that on August 16, 2017, less than three weeks after the claim was made, its claims personnel learned that Mr. Turnipseed had confirmed that he sold VIN 251 to MLJ, and VIN 253 had been traded in to a dealer.

When evidence indicates that the parties to an insurance policy intended for it to provide certain coverage, but the insurance agent made a clerical error on the declarations page, the policy can be reformed to reflect the true intent of the parties. Parol evidence is admissible to show mutual error even though the express terms of the policy are clear. The party seeking reformation sometimes has the burden of proving a mutual error by clear and convincing evidence, but it need only satisfy a preponderance of the evidence burden to reform a policy in a manner that does not substantially affect the risk assumed by the insurer. Samuels v. State Farm Mutual Auto Ins. Co., 939 So.2d 1235 (La. 2006).

That is what happened in Samuels when everyone involved admitted that there had been a clerical error by the agent who mistakenly identified an umbrella policy as a homeowner's policy and used an incorrect policy number on a renewal policy. The Supreme Court of Louisiana unanimously held that reformation was required, given the uncontested evidence of mutual error, so that the coverage reflected the true intent of the parties.

The summary judgment record in this case gives rise to a genuine dispute as to whether the Berkshire policy should be reformed to reflect that the truck that is the subject of Claim No. 1 is covered by the policy. The evidence discussed above indicates that was the intent of both MLJ and the Pace agency, but a mistake was made in the listing of the

VIN, and the mistake does not appear to have affected the risk assumed by Berkshire. Berkshire even admitted during discovery that it "paid this disputed claim as an act of good faith based upon the determination that MLJ's failure to schedule truck No. 1 was inadvertent and in order to attempt to avoid litigation."

Berkshire's motion for summary judgment anticipated a reformation argument. It made a brief assertion that penalties should nonetheless be unavailable because its conduct should be judged based on the facts known at the time of its action. This issue was not fully briefed. And MLJ's opposition suggests that the origin of the VIN mistake was in the sales contract between Turnipseed and MLJ, and Pace notified the Berkshire claims adjuster of the error as early as August 16, 2017. Berkshire did not pay the claim until November 28, 2017, which was more than 90 days after the clerical error was corrected. Given these facts, Berkshire has not demonstrated that it is entitled to summary judgment with respect to Claim No. 1.

**Claim No. 2**

MLJ alleged in its petition that its 2015 Peterbilt truck was damaged in an accident on August 8, 2017. MLJ reported the accident to Berkshire the next day. Berkshire assessed the loss as $47,673.84, less a $1,000 deductible, but MLJ did not receive a check until October 21, 2017. MLJ alleges that it is entitled to statutory penalties and attorneys' fees pursuant to La. R.S. 22:1892(B)(1) and La. R.S. 22:1973.

Section 1892(A)(1) provides that insurers shall pay the amount of any claim due any insured within 30 days "after receipt of satisfactory proofs of loss from the insured or any party in interest." Section 1892(B)(1) provides that failure to make such payment

within 30 days "after receipt of such satisfactory written proofs and demand therefor. . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss of fifty percent damages on the amount found to be due from the insurer to the insured or one thousand dollars, whichever is greater. . . ."

Section 1973 provides that an insurer owes his insured a duty of good faith and fair dealing, including a duty to adjust claims fairly and promptly. The statute lists certain acts that, if knowingly committed or performed by an insurer, constitute a breach of that duty. One of them is failing to pay the amount of any claim due any person insured by the contract "within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." § 1973(B)(5). Subsection C then provides: "In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."

Louisiana law allows a bad faith claimant to recover attorney fees under Section 1892 plus the maximum penalty available under either Section 1892 or Section 1973. Calogero v. Safeway Ins. Co. of La., 753 So.2d 170 (La. 2000). The penalties under Section 1973 are based on the consequential damages sustained because of a breach of duties under the statute; the penalties are not calculated by doubling the amounts due under the policy. Thomas v. Hartford Accident & Indemnity Co., 2018 WL 1548897, *4 (W.D.

La. 2018); Manshack v. Ocwen Loan Servicing, LLC, 2014 WL 5500456, *4 (W.D. La. 2014).

MLJ made Claim No. 2 on August 9, 2017, and it was not paid until more than 60 days later, on October 21, 2017. Berkshire moves for summary judgment on the grounds that it did pay the claim within 30 days after the adjuster it hired fully apprised it of the amount of the loss.

Under Louisiana law, a cause of action for penalties requires a showing that (1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within 30 days of receipt thereof, and (3) the insurer's failure to pay was arbitrary, capricious, or without probable cause. First American Bank v. First American Transp. Title Ins. Co., 759 F.3d 427, 436 (5th Cir. 2014). Courts have defined satisfactory proof of loss from the claimant as "that which is sufficient to fully apprise the insurer of the insured's claims." Amco Insulations, Inc. v. National Union Fire Ins. Co., 787 F.3d 276, 286 (5th Cir. 2015).

Louisiana has adopted liberal rules concerning the lack of formality relative to proof of loss. So long as the insurer obtains sufficient information to act on the claim, the manner in which it obtains the information is immaterial. Whether the insured satisfactorily bears its burden of proving satisfactory proof of loss is a question of fact. Amco, 787 F.3d at 286. The phrase "arbitrary, capricious, or without probable cause" has been described as synonymous with vexatious, and a vexatious refusal to pay means unjustified, without reasonable or probable cause or excuse. This is said to describe an insurer whose willful

refusal of a claim is not based on a good faith defense. Louisiana Bag Co., Inc. v. Audubon Indemnity Co., 999 So.2d 1104, 1114 (La. 2008).

The 2015 Peterbilt at issue on Claim No. 2 was damaged on August 8, 2017 when it overturned at a job site near Waskom, Texas. Thomas Mortland testified on behalf of Berkshire at a deposition. He stated that the claim was initially assigned to adjuster C.J. Hester, but that adjuster declined the case because it did not provide coverage for that area. A claims note from August 21, 2017 indicates that Jennifer Rutkowski, acting on behalf of Berkshire, advised Mrs. Jackson that MLJ's claim had been reassigned to Texarkana Claim Service, which did provide coverage for the area. The letter that assigned the matter to Blake Murphy at Texarkana Claim Service stated: "We require receipt of your first report within 10 days." Ms. Rutkowski received an acknowledgment of the assignment from Mr. Murphy on August 22.

Mr. Murphy's report states that he received the assignment on August 21, 2017, contacted Mrs. Jackson on August 22 to learn the truck's location, and inspected the truck at the job site on August 23. Mr. Murphy testifies in an affidavit that he could not then complete a final estimate without information from MLJ's chosen repair shop regarding the scope and price of the work to be performed. The report also states that Murphy had conversations with Mr. Jackson regarding the responsibility for towing the truck to a repair facility, after which he "left several unanswered return call requests" to Mr. Jackson regarding the status of the truck.

Mr. Murphy states in his report that the repair shop contacted him on September 11, 2017. Murphy testifies in his affidavit that, between September 11 and September 21,

2017, he exchanged several emails and phone calls with representatives of MLJ and the repair shop to discuss the repairs needed and the cost of those repairs. He finalized his estimate on September 21, 2017 and, on September 26, 2017, he submitted his report to the claims management firm that was acting on behalf of Berkshire. The report states that it is "a first report" regarding the claim, and it provides detailed information about the parts and labor expenses for each of the 47 items that required repair or replacement, plus four other categories of expenses. The total cost of repairs was estimated at $47,673.84. The claim was apparently approved, as Mr. Murphy testifies that he mailed payment to MLJ on October 19, 2017.

The claims notes indicate that there was some communication about the length of time it was taking to complete the claim. Mr. Murphy testifies in his affidavit that he inspected the truck on August 23, but Mrs. Jackson called on August 24 wondering why an adjuster had not been sent out to look at the truck, and she was given Mr. Murphy's contact information. Someone called again on behalf of MLJ on August 29 and stated that there had not yet been an inspection. The Berkshire claims officer emailed Murphy and requested that he inspect or let them know if he had already done so. A note on September 8 shows that the insured had continued to call and say that the truck had not been inspected. It was noted that Hurricane Harvey could be causing delays. The record does not appear to indicate that Murphy confirmed or communicated that he had already inspected the truck on August 23, as he now testifies in his affidavit.

Gretchen Cunningham with the claims company left a message for Murphy on September 8 and asked him to call back to confirm that the insured had been contacted and

to advise of any issues regarding the adjustment. Ms. Rutkowski made a note on September 25 that she left a message for Mr. Murphy to call back ASAP to determine where he was with the inspection. Mr. Murphy, according to his affidavit, had finalized his estimate on September 21, and he finalized his report and forwarded it to the claims company on September 26. An October 9 note states that Gretchen Cunningham reviewed the report and estimate, together with the supporting lease agreement, photos, and other information.

MLJ made this claim on August 9, 2017, Mr. Murphy tendered his report on September 26, 2017, and payment was mailed to MLJ on October 19, 2017. Berkshire argues that it is entitled to summary judgment on this claim because it issued payment within 30 days after it received Mr. Murphy's report, which was the earliest date that it received a satisfactory proof of loss. Berkshire states that Louisiana courts have held that insurers do not act in bad faith by retaining adjusters and relying on their estimates of the loss. It cites two cases in support. The first is Cooper v. Farmers Insurance Exchange, 210 So.3d 829 (La. App. 2d Cir. 2016), which was decided after a trial. The company promptly sent an adjuster who issued a low estimate, the homeowner retained an adjuster who issued a higher estimate, and the insurer re-inspected the home with a new adjuster. The appellate court found no error in the trial court's finding that the plaintiffs did not meet their burden of proving the insurer acted arbitrarily under the circumstances, where there was substantial disagreement about the valuation of the loss. Berkshire also cites Maloney Cinque, LLC v. Pacific Ins. Co., Ltd., 89 So.3d 12 (La. App. 4th Cir. 2012), which was also an appeal from a trial rather than a summary judgment ruling. There were, again, significant disagreements about the amount of loss, with more than one estimate tendered.

The court noted that whether an insurer acted in bad faith turns on the facts and circumstances of each case, with great deference to the trier of fact, and it affirmed the trial court's decision regarding when the insurer received satisfactory proof of loss.

Berkshire has not cited authority for the proposition that an insurer who hired an adjuster is insulated from penalties if the adjuster does not complete his work promptly. Some Louisiana decisions have held that an insurer was arbitrary and capricious in failing to pay a claim even though the failure resulted from the error or omission of an adjuster. Aghighi v. Louisiana citizens Property Ins. Corp., 119 So.3d 930 (La. App. 4th Cir. 2013); Perez v. Allstate Ins. Co., 625 So.2d 1067 (La. App. 4th Cir. 1993). But appellate courts have also affirmed the denial of sanctions when a district court made a finding at trial that the insurer did not receive satisfactory proof of loss until the adjuster tendered his report. French v. Allstate Indemnity Co., 637 F.3d 571, 585 (5th Cir. 2011).

This is not a trial. Berkshire is asking for summary judgment, which means that it must show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law on this claim. Berkshire has not cited specific authority for the proposition that an insurer is insulated from penalties if it promptly appoints an adjuster, the adjuster arguably delays unreasonably in submitting an estimate, and the insurer pays the claim promptly after receiving the estimate but well more than 30 days after the claim was submitted. Perhaps there is such authority, but it is not the court's obligation to search for it. The court has considered the decisions cited by Berkshire, and they do not show that Berkshire is entitled to judgment as a matter of law at this stage of the case. There are facts in disupute regarding the reason for Mr. Murphy's delay, Berkshire has not identified legal

authority that would excuse the delay, and a determination of whether penalties are in order is fact sensitive. For these reasons, Berkshire is not entitled to summary judgment with respect to Claim No. 2. Accordingly, **Berkshire's Motion for Summary Judgment (Doc. 27) is denied**.

THUS DONE AND SIGNED in Shreveport, Louisiana, this the 14th day of August, 2019.

Mark L. Hornsby
U.S. Magistrate Judge