UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MELVIN JACKSON, ET AL          CIVIL ACTION NO. 18-cv-1146

VERSUS          MAGISTRATE JUDGE HORNSBY

BERKSHIRE HATHAWAY GLOBAL
INSURANCE SERVICES

## MEMORANDUM RULING

**Introduction**

    MLJ Trucking, LLC, owned by Melvin and Janet Jackson, is a small trucking company that operates two trucks. Mr. Jackson drives one of the trucks, and an employee drives the other. Almost all of the company's business is hauling logs for a larger trucking company, Turnipseed Trucking.

    MLJ's had a policy of commercial auto insurance issued by Berkshire Hathaway Homestate Insurance Company. Both of MLJ's trucks were damaged in separate accidents in late 2017, and they were out of commission until repairs could be made. MLJ filed separate property damage claims with Berkshire, which eventually made payments that allowed MLJ to repair the trucks and put them back in service.

    MLJ filed this suit against Berkshire based on Louisiana penalty statutes that allow an insured to recover damages and attorneys' fees for certain arbitrary and capricious delays in paying a claim. A bench trial was held, at which the court heard testimony from the Jacksons, an insurance adjuster, a Berkshire vice president, and a CPA who calculated

damages. For the reasons that follow, the court finds that MLJ is entitled to a statutory penalty and fees with respect to one of the two claims.

**Louisiana Penalty Statutes**

MLJ alleges that it is entitled to statutory penalties and attorneys' fees pursuant to La. R.S. 22:1892(B)(1) and La. R.S. 22:1973. Section 1892(A)(1) provides that insurers shall pay the amount of any claim due any insured within 30 days "after receipt of satisfactory proofs of loss from the insured or any party in interest." Section 1892(B)(1) provides that failure to make such payment within 30 days "after receipt of such satisfactory written proofs and demand therefor. . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss of fifty percent damages on the amount found to be due from the insurer to the insured or one thousand dollars, whichever is greater. . . ."

Section 1973 provides that an insurer owes his insured a duty of good faith and fair dealing, including a duty to adjust claims fairly and promptly. The statute lists certain acts that, if knowingly committed or performed by an insurer, constitute a breach of that duty. One of them is failing to pay the amount of any claim due any person insured by the contract "within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." § 1973(B)(5). Subsection C then provides: "In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."

The substantive obligation of the insurer under the two statutes is virtually identical. The statutes differ in that Section 1892 is triggered by a 30-day delay, while Section 1973 is not triggered until there has been a 60-day delay. The penalty calculations are also different. Section 1892 provides for a straightforward 50% penalty. The penalty under Section 1973 is calculated based on the consequential damages sustained because of a breach of the insurer's duties under the statute; the penalty is not calculated by doubling the amounts due under the policy. Thomas v. Hartford Accident & Indemnity Co., 2018 WL 1548897, *4 (W.D. La. 2018); Manshack v. Ocwen Loan Servicing, LLC, 2014 WL 5500456, *4 (W.D. La. 2014).

When Section 1973 provides the greater penalty, it supersedes Section 1892; the insured cannot recover penalties under both statutes. However, because Section 1973 does not provide for attorney fees, the insured is entitled to recover the greater penalties under its provisions and attorney fees under Section 1892. Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675 n. 5 (5th Cir. 2011); Calogero v. Safeway Ins. Co. of La., 753 So.2d 170 (La. 2000); Bourg v. Safeway Insurance Company of Louisiana, __ So. 3rd __, 2020 WL 1129689, n.7 (La. App. 1st Cir. 3/5/20) .

**Claim No. 1**

**A. Relevant Facts**

Truck No. 1 is a 2014 Peterbilt that was damaged in an accident on July 31, 2017. MLJ reported the accident to Berkshire that same day. By August 2, 2017, Berkshire had assigned the claim to adjuster CJ Hester, Inc. to investigate. Hester inspected the truck on August 3 and issued an appraiser's report on August 7, 2017 that estimated the damages to

be $40,752.84 (less a $1,000 deductible).  There is no indication of a dispute about the cost of the repairs, but Berkshire did not issue a check to MLJ until November 28, 2017, which was 113 days after the appraiser's report issued.

Mrs. Jackson testified that she was told by Berkshire that the delay in paying the claim was due to the Vehicle identification Number ("VIN") on the policy being different from the one on the truck that was damaged.  The damaged truck was a 2014 Peterbilt truck bearing VIN 1XPXDP0X**9**ED23325**3**.  The Berkshire policy listed a 2014 Peterbilt with a VIN 1XPXDP0X**5**ED23325**1**.  The Berkshire policy schedule did not list a truck with VIN 253.

Mrs. Jackson testified that when MLJ leased the truck from Turnipseed Trucking, Turnipseed had insurance on the truck through the Pace Insurance Agency.  There was no testimony about the exact role of Pace, but the facts suggest it was an independent insurance agency that had a relationship with Berkshire.  MLJ asked Pace to place insurance on the truck in MLJ's name.  There was, however, a mistake about the VIN for the 2014 Peterbilt in the lease paperwork, and that mistake was continued to the insurance papers.

Claims notes from persons who worked for or with Berkshire show that on August 16, 2017, someone at Berkshire had a long conversation with persons at Pace, one of whom called Brenton Turnipseed.  Mr. Turnipseed confirmed that there was an error in the paperwork; he traded the 251 truck to a dealership in Shreveport and leased the 253 truck to MLJ.  Mr. Turnipseed said that he had to go to the DMV and sort everything out.  Pace informed Berkshire that it was "sending an endorsement right now to correct the VIN." Berkshire informed the adjuster about the VIN issue, said the company was "sorting it out

here," and that it would let the adjuster know "once we are ready to move on the claim." Mrs. Jackson testified that the repair shop stopped working on the truck when the VIN issue arose.

Pace sent Berkshire a revised loss notice with the corrected VIN on August 16, 2017. On August 17, Robbie Thielen (a Berkshire employee) emailed Pace and said that DOT records showed that VIN 251 that MLJ claims to never have bought was inspected by the DOT in January and March and listed by the DOT as being operated by MLJ. Mr. Thielen stated that the company "will not be amending the VIN of the vehicle to match the one involved in a claim on this."

Thomas Mortland, a vice president with Berkshire, testified at trial that an incorrect VIN is a red flag to the insurance company. Some owners may insure fewer than all of their trucks and try to defraud the insurer by making a claim for damage to an uninsured vehicle. The company has to investigate such claims very carefully. Mortland said that the discovery of the issue in this case did not result in a denial of the claim. The company simply had to do further investigation before it would pay the claim.

Tamara with Pace emailed Mr. Thielen on August 17, 2017 and stated that Pace had visited at length with Mr. Turnipseed, who explained the VIN mix-up. Turnipseed also stated that when the DOT inspected the other truck, the officer only checked the registration and did not compare the VIN on the registration papers to the one on the door of the truck, which would have established that the VINs did not match. This resulted in the DOT records incorrectly indicating that the VIN 251 truck was inspected while operating under the license of MLJ.

Tamara also explained to Mr. Thielen that she had learned from a local dealership that the 251 truck had experienced a blown motor so that it was not even in running condition in January, and it was later sold to Womack and Sons in another city. Tamara sent Mr. Thielen an email on September 1, 2017 with shop records that showed the 251 truck entered the shop in November 2016 and did not leave the shop until February 17, after which it was sold to Womack and Sons. She stated that MLJ leased and was operating truck 253.

A claims note from August 25, 2017 shows that Mrs. Jackson/MLJ called Berkshire and wanted an estimated time frame for "when this will get sorted out" since the VIN issue had been explained. Berkshire told her that the claim was under review, and she asked for an answer soon. A Berkshire employee prepared a policy application review ("PAR") on September 8, 2017 and submitted it for review. A note from September 12 shows that the file was referred due to a potential coverage issue; the vehicle involved was not scheduled on the policy. The PAR prepared by the adjuster was submitted to the company for review and determination.

Tamara with Pace sent another email to Mr. Thielen on September 22, 2017. She attached a letter from the Peterbilt dealership that stated that the company had truck 251 in its possession for a period through April 28, 2017. She said, "I absolutely do not know what else I can provide to you for proof that the dealership had the vehicle #251 and the insured had vehicle #253."

Mr. Mortland explained that Berkshire has regular meetings with the legal department and examiners to decide what to do on a PAR. The claim could be denied,

further investigated, or other action could be taken. He could not recall whether he was personally involved in the assessment of this PAR, but he was familiar with the process. The company ultimately decided to pay the claim on a disputed basis. He said the company never did get "full resolution" of the VIN issue, and the 253 truck was not added to the policy. Berkshire simply elected to pay the claim to resolve that particular claim/dispute.[1]

A claims note from October 24, 2017 shows that a Berkshire employee received a call from the insured and "advised we have agreed to pay the claim on a disputed basis and will be able to pay the full amount of the estimate, less a $1,000 deductible for a total of $39,752.84." The check was not issued, however, until more than 30 days after that on November 28, 2017.

### B. Reformation of the Policy

When evidence indicates that the parties to an insurance policy intended for it to provide certain coverage, but the insurance agent made a clerical error on the declarations page, the policy can be reformed to reflect the true intent of the parties. Parol evidence is admissible to show mutual error even though the express terms of the policy are clear. The party seeking reformation sometimes has the burden of proving a mutual error by clear and convincing evidence, but it need only satisfy a preponderance of the evidence burden to reform a policy in a manner that does not substantially affect the risk assumed by the insurer. Samuels v. State Farm Mutual Auto Ins. Co., 939 So.2d 1235 (La. 2006).

---

[1] Berkshire admitted during discovery that it "paid this disputed claim as an act of good faith based upon the determination that MLJ's failure to schedule truck No. 1 was inadvertent and in order to attempt to avoid litigation."

That is what happened in Samuels when everyone involved admitted that there had been a clerical error by the agent who mistakenly identified an umbrella policy as a homeowner's policy and used an incorrect policy number on a renewal policy. The Supreme Court of Louisiana unanimously held that reformation was required, given the uncontested evidence of mutual error, so that the coverage reflected the true intent of the parties.

The Berkshire policy must be deemed reformed to reflect that the truck that is the subject of Claim No. 1 is covered by the policy. The evidence showed that was the intent of both MLJ and the Pace agency, but a clerical mistake was made in the listing of the VIN. The mistake did not affect the risk assumed by Berkshire with respect to the truck. It was willing to insure a 2014 Peterbilt for a certain premium, and both VINs belong to such trucks.

**C. Penalties**

Section 1892(A)(1) provides that insurers shall pay the amount of any claim due any insured within 30 days "after receipt of satisfactory proofs of loss from the insured or any party in interest" and may be subject to penalties when "such failure is found to be arbitrary, capricious, or without probable cause." Section 1973 allows for penalties if payment is not made within 60 days "after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause."

Satisfactory proof of loss is that which is sufficient to fully apprise the insurer of the insured's claim. Jacobs v. GEICO Indem. Co., 256 So. 3d 449, 456 (La. App. 2d Cir. 2018). Berkshire received an appraisal report from its adjuster, and it does not contend

that the report fell short of this requirement. The question is whether Berkshire acted in violation of the statutory standard when it did not pay the claim until 113 days after it received that proof of loss.

Louisiana courts have said that the phrase "arbitrary, capricious, or without probable cause" is synonymous with "vexatious" and means a refusal to pay that is unjustified and without a reasonable or probable cause or excuse. La. Bag Co. v. Audubon Indem. Co., 999 So.2d 1104, 1114 (La. 2008). It describes "an insurer whose willful refusal of a claim is not based on a good-faith defense." Id. "[W]hen there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause." Id.

Berkshire received an appraisal on August 7. It received clarification about the VIN mix-up and on September 8, a Berkshire employee submitted a PAR for review. By September 22, when Tamara emailed Berkshire with additional information about the truck that was in the shop, Berkshire had all of the relevant facts in its possession to resolve the VIN issue. It waited more than 30 days after that to state that it would pay the claim on a disputed basis. It then waited more than 30 more days, with an appraisal long in hand, before it issued a check.

A reasonable argument can be made that, after Berkshire had its PAR under consideration and all relevant facts in hand by September 22, the clock started running for payment on the satisfactory proof of loss that was submitted weeks earlier on August 7. Berkshire had every bit of information necessary to determine that the policy should be

considered reformed so that the claim was lawfully payable. But the court finds that failure to pay within 30 or 60 days of that time was not arbitrary, capricious, or without probable cause; Berkshire was entitled to a reasonable time to review that information and decide whether the policy should be treated as reformed.

Berkshire took 46 days, from the September 8 submission of the PAR to the October 24 notation, to consider the facts and decide that it would pay the claim. To that point, it was not being arbitrary or acting without probable cause. But after that point, there was no further excuse for delay. Berkshire possessed an appraisal report—satisfactory proof of loss—for more than two months before it decided to pay. Yet, once it decided to pay, it delayed more than 30 additional days, until November 28, to issue a check. There is no explanation for why Berkshire delayed beyond the 30-day period once it (1) had facts that showed it no longer had a basis for a good faith defense based on the VIN and (2) it decided to pay the claim. The court finds that this delay was arbitrary, capricious, or without probable cause. See La. Bag Co, 999 So.2d at 1121 ("we have specifically defined an insurer's failure to tender timely payment of an undisputed amount as conduct that is without probable cause.").

Berkshire argues that any delay was reasonable under the circumstances of the VIN mix-up. The court finds that the clerical error did not entitle the insurer to avoid all application of the penalty statutes for any length of delay. Once the company had both proof of loss and overwhelming evidence that the VIN issue should be resolved in favor of the insured, it became obligated to pay the claim within the statutory time period. It did not, so it should be subjected to a penalty under Section 1892 and its 30-day limit.

Berkshire did not exceed Section 1973's 60-day period, so the penalty provision of that statute does not apply.

Section 1892(B)(1) provides that an insurer who violates the timely payment provision shall be subject to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or $1,000, whichever is greater. The parties stipulated in the pretrial order (Doc. 43, ¶¶ D(4) & (5)) that the amount paid by Berkshire for property damage to truck no. 1 was, after subtracting the deductible, a net total of $39,752.84. Berkshire argues in its post-trial memorandum (Doc. 68, p. 12) that the court should use the actual cost of repairs, $30,112.76, but that is contrary to the stipulation in the pretrial order. Fifty percent of the stipulated amount due from the insurer is $19,876.42.

**Claim No. 2**

    **A. Relevant Facts**

MLJ also leased a 2015 Peterbilt that was damaged in an accident on August 8, 2017. MLJ reported the accident to Berkshire on that same day. Berkshire immediately acknowledged the damage claim and assigned a claim number. Mrs. Jackson testified that she told Berkshire where the truck was located in a rural area and gave them her husband's contact information in case the adjuster needed help finding the remote location. It was her understanding that Berkshire would coordinate with Mr. Jackson about the inspection of the truck.

A Berkshire claims note from August 14, 2017 included Mrs. Jackson's description of the accident; the truck got stuck in the mud at the end of the day and was found on its

side the next morning.  The note stated that MLJ's repair shop of choice was Jackson Truck & Trailer Repair.  Berkshire advised that CJ Hester, Inc. would be in contact to coordinate a time to meet and appraise the damage.  McCord & Associates, an entity associated with Berkshire, assigned the loss to CJ Hester, Inc. for investigation and damage appraisal.

Mrs. Jackson called Berkshire on August 18, and she was given the contact information for CJ Hester.  Mrs. Jackson called Berkshire on August 21 and said that Hester told her that they would not be handling the claim.  (The truck was outside the area Hester served.)  Berkshire told Mrs. Jackson that the claim was being reassigned to Texarkana Claims Service and that she would be contacted once the assignment was sent.  A new loss assignment was sent to Blake Murphy with Texarkana Claims Service on August 21, 2017, and he confirmed receipt that same day.  Mrs. Jackson called Berkshire again on August 24 and asked why no one had inspected the truck.  She was given Blake Murphy's contact information.

The new loss assignment forms that Berkshire sent to Blake Murphy on August 21 stated, "We require receipt of your first report within 10 days."  A claims representative with Berkshire sent an email to Murphy on August 29 and stated that it appeared that the insured vehicle had not yet been inspected, and the agent on the claim "is very eager to get this resolved."  The email asked Murphy to please contact the insured to schedule an inspection. A Berkshire claims note from September 8, 2017 stated that it appeared the insured had been calling and saying that the vehicle had not yet been inspected.  The note added that the Berkshire employee called Blake Murphy and left a voicemail requesting a call back to confirm that the insured had been contacted and to advise of any issues.  More

than two weeks later, on September 25, a Berkshire claims note stated that a message was left for Murphy to call back ASAP to determine where he was with the inspection of the truck.

Blake Murphy finally emailed his report to Berkshire on September 26, 2017 (more than 30 days after the matter was assigned to him). His report stated that the truck was damaged on August 8 and inspected by him on August 23. An agreed appraisal with the repair shop was reached on September 21, with the total damages in the amount of $47,673.84. Murphy requested a check for that amount, less the $1,000 deductible. Berkshire mailed a check for that amount to MLJ on October 19, and MLJ received the check on October 21, less than 30 days after Berkshire received Murphy's appraisal report.

Blake Murphy's deposition was submitted at trial with the agreement of the parties. He testified that he has worked as an independent insurance adjuster since 2001 and had worked before with Berkshire, which was one of his favorite companies because they tended to trust his judgment. He admitted that he received the claim on August 21 and issued his report to Berkshire on September 26, 2017.

Mr. Murphy said that his first step was to contact Mrs. Jackson for basic information. He also talked to Mr. Jackson in the next day or so. He inspected the truck the same day he obtained the location information, and he called Mr. Jackson from the site. He explained to Mr. Jackson during their conversation that MLJ would be responsible for arranging to have the truck towed to a repair shop. Berkshire might reimburse MLJ for wrecker fees, but Berkshire would not arrange or order the towing. (Mrs. Jackson testified

that she did not know who arranged for the towing, but MLJ did not pay for it.)  Mr. Murphy recalled that Mrs. Jackson gave him the repair shop name a week or so later.

Mr. Murphy said he talked to someone at the repair shop on the same day the shop received the truck, which was September 11, 2017.  Murphy explained that with passenger cars, he is often able to use a simple program to immediately obtain the price of the various parts that must be replaced.  But with commercial trucks, he can use a program to identify the parts needed, but the prices must be agreed upon with the shop.  He said the prices vary significantly among various repair facilities.  He also discussed with the shop whether the truck's cab should be replaced or repaired.  He and the shop finally reached an agreement on the cost of the repairs on September 21, 2017, ten days after the shop received the truck.

Mr. Murphy was asked about the letter that assigned the case to him and asked for his first report within 10 days.  He said he read that as a request for information about anything unusual with respect to the claim.  Mr. Murphy said some of the delay was attributable to not knowing which repair shop would be used, but a claims note in Berkshire's file showed that MLJ had told Berkshire the name of its repair shop on August 14 (a week before the claim was assigned to Mr. Murphy).

**B. Analysis**

Under Louisiana law, a cause of action for penalties requires a showing that (1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within 30 days of receipt thereof, and (3) the insurer's failure to pay was arbitrary, capricious, or without probable cause.  <u>First American Bank v. First American Transp. Title Ins. Co.</u>, 759 F.3d 427, 436 (5th Cir. 2014).

Plaintiffs argue that Mr. Murphy knew when he first inspected the truck that there was damage, so the clock started running then for Berkshire to pay the undisputed part of the damages within 30 days. But the penalty statutes do not require payment within a certain time from the insurer or its retained adjuster learning of some damage. They are triggered by the insurer's receipt of satisfactory proofs of loss.

Satisfactory proof of loss from the claimant is "that which is sufficient to fully apprise the insurer of the insured's claims." Amco Insulations, Inc. v. National Union Fire Ins. Co., 787 F.3d 276, 286 (5th Cir. 2015). And the *fully apprise* requirement was italicized for emphasis in McDill v. Utica Mut. Ins. Co., 475 So.2d 1085 (La. 1985). Louisiana has adopted liberal rules concerning the lack of formality relative to proof of loss, but satisfactory proof of loss must include the extent of damages. Amco, 787 F.3d at 286. And the claimant has the burden of proving when the insurer received satisfactory proof of loss. French v. Allstate Indem. Co., 637 F.3d 571, 591 (5th Cir. 2011).

Berkshire was not fully apprised of the claim and the extent of damages until Mr. Murphy submitted his report to Berkshire on September 26, 2017. Berkshire issued a check less than 30 days later on October 19, 2017. Plaintiffs argue that Mr. Murphy took too long to issue his report. There was evidence that he could have communicated more effectively, but there is no indication that Berkshire was to blame for the delay. Berkshire asked Mr. Murphy to tender a first report within 10 days, and it followed up with a number of emails and phone calls in an effort to quickly resolve the claim. The statutory provisions invoked by MLJ do not subject Berkshire to a penalty for the largely explained delay

between Mr. Murphy inspecting the truck on August 23 and submitting his report (the first satisfactory proof of loss) to Berkshire on September 26.

This is not to suggest that an insurer may simply assign a matter to an adjuster and wash its hands of any delays until the adjuster gets around to submitting a report.[2] That is not what happened here. Berkshire assigned the matter to Murphy and took reasonable steps to have him investigate the claim promptly and present satisfactory proof of loss. Mr. Murphy gave a reasonable explanation for the delay in completing his report, and Berkshire paid the claim promptly upon receipt of Murphy's appraisal report. No penalties are warranted with respect to the claim regarding truck no. 2.

**Attorney Fees and Costs**

MLJ has proved by a preponderance of the evidence that Berkshire is obligated to pay MLJ a statutory penalty of $19,876.42. MLJ also asks for an award of "reasonable attorney fees and costs" as allowed by the penalty statute. A claim for attorney's fees and expenses must ordinarily be made by motion, Fed. R. Civ. Pro. 54(d)(2)(A), and the standard practice in this court is to take up fee awards by post-trial motion. The parties are encouraged to attempt to stipulate to an amount for a reasonable award of fees and costs. If they are unable to do so, MLJ may file a motion for fees and costs within 21 days after the entry of judgment.

---

[2] Some Louisiana decisions have held that an insurer was arbitrary and capricious in failing to pay a claim even though the failure resulted from the error or omission of an adjuster. Aghighi v. Louisiana citizens Property Ins. Corp., 119 So.3d 930 (La. App. 4th Cir. 2013); Perez v. Allstate Ins. Co., 625 So.2d 1067 (La. App. 4th Cir. 1993).

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." Mathis v. Exxon Corp., 302 F.3d 448, 461 (5th Cir. 2002). Louisiana courts that assessed fee awards under insurance penalty statutes have considered the services needed to effect recovery, the degree of professional skill and ability exercised, the volume of work performed, the time devoted to the case, the result obtained, the novelty and difficulty of the questions involved, and the percentage fixed for attorney fees in the plaintiff's contract. Geraci v. Byrne, 934 So.2d 263, 268 (La. App. 5th Cir. 2006); DeSoto v. Balbeisi, 837 So.2d 48, 51-52 (La. App. 1st Cir. 2002). See also Leleux v. Assurance Co. of America, 2012 WL 5818226 (W.D. La. 2012) (Haik, J.) (assessing a fee award under Section 1892).

**Interest**

MLJ asks for legal interest on any award. "State law governs the award of prejudgment interest in diversity cases." Harris v. Mickel, 15 F.3d 428, 429 (5th Cir. 1994). Louisiana law does not provide for prejudgment interest on awards of penalties or attorney fees under the insurance statutes. "Because awards of penalties and attorney fees are not automatic, but rather rest with the discretion of a factfinder, they become due, if at all, only on the date of their award; thus, such awards may not earn interest until after that date." Hendrick v. Patterson, 109 So. 3d 475, 485 (La. App. 2d Cir. 2013), citing Sher v. Lafayette Ins. Co., 988 So. 2d 186, 203 (La. 2008) ("penalties imposed on insurers become

due only after the date of their award, and interest on such penalties is due only from the date of judgment").[3]

Post-judgment interest on money judgments recovered in federal district court, including diversity cases, is governed by 28 U.S.C. § 1961(a). Fuchs v. Lifetime Doors, Inc., 939 F.2d 1275, 1280 (5th Cir. 1991). Accordingly, the judgment will provide for post-judgment interest at the federal rate specified by Section 1961(a).

**Appeal Delays**

Federal Rule of Civil Procedure 58(e) provides: "Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees. But if a timely motion for attorney's fees is made under Rule 54(d)(2), the court may act before a notice of appeal has been filed and become effective to order that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59."

The court hereby orders that a motion for fees and costs filed within 21 days after entry of the judgment will have the same effect on appeal delays in this case as would a timely filed Rule 59 motion. The time for filing a notice of appeal will begin on entry of an order that disposes of the motion for fees and costs. F.R.A.P. 4(a)(iii). It is not expected that the fees and costs matter will take much time to resolve, and it is more efficient for

---

[3] The Fifth Circuit surveyed state appellate court decisions in Smith v. State Farm Fire and Cas. Co., 695 F.2d 202 (5th Cir. 1983) and held that the persuasive weight of Louisiana decisions provided for interest from the date of judicial demand on insurance penalty and fee awards under La. R.S. 22:658 (a predecessor to the current penalty statutes). The Supreme Court of Louisiana later looked at the issue in Sher for the first time and went in the other direction.

there to be a single appeal (if one is filed) in which the parties and appellate court can address both the merits and the fees.

     THUS DONE AND SIGNED in Shreveport, Louisiana, this the 28th day of May, 2020.

                                          Mark L. Hornsby
                                          U.S. Magistrate Judge